UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KRATZER FARMS INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>INDIANA GRAIN BUYERS AND )<br>WAREHOUSE LICENSING AGENCY )<br>and THOMAS HENRY WILMOTH in his )<br>official and personal capacity, )<br>)<br>Defendants. ) | Cause No. 1:22-CV-213-HAB |

**OPINION AND ORDER**

Plaintiffs are a group of farms and farmers who claim they suffered damages when a grain elevator, regulated by Defendants, went under. They have now filed three multi-count complaints, alleging causes of action under federal and state law. Plaintiffs amended the first complaint on their own. The Court granted in part and denied in part a motion to dismiss the second complaint, granting Plaintiffs leave to amend. (ECF No. 20). Defendants, via the Indiana Attorney General's Office, now move to dismiss the second amended complaint. The motion is fully briefed (ECF Nos. 31, 39, 40) and is ripe for ruling.

**I.      Plaintiffs' Allegations**

Defendant Indiana Grain Buyers and Warehouse Licensing Agency ("Agency") is the regulatory agency tasked with administering the Indiana Grain Indemnity Program ("Program"), codified at Title 26 of the Indiana Code. Defendant Thomas Henry Wilmoth ("Wilmoth") has acted as the Agency's director since 2018. The Program has two parts. The first is licensure of companies that buy or store grain in Indiana. The licensing regulations include strict financial requirements,

including positive net worth and certain asset-to-liability ratios. Licensees must show compliance with the financial requirements every year to obtain annual license renewals.

The second part is the Indiana Grain Indemnity Fund ("Fund"). The fund is overseen by the Indiana Grain Indemnity Corporation ("Corporation"), and Wilmoth regularly reports to the Corporation on licensed grain buyers in financial trouble.

The licensee here was Salamonie Mills, Inc. ("SMI"), a grain elevator in Wells and Huntington Counties. SMI's financial condition did not meet the Program's financial licensing requirements from 2012 through 2020, and they reported as much to the Agency. Still, the Agency licensed SMI each of those years.

By early 2020, SMI faced foreclosure. With that foreclosure imminent, the Agency suspended SMI's license in March 2020. The Agency determined that SMI's "failure date," a date used to determine what farmers' grain deposits would be eligible for reimbursement by the Fund, as March 20, 2020. This meant that only farmers who delivered grain within two years of that date were eligible for reimbursement from the Fund.

Plaintiffs appealed the selected "failure date" via the Indiana administrative process. It was through discovery in that appeal that Plaintiffs learned of SMI's long-term financial problems and the Agency's continued licensure in violation of the terms of the Program. Plaintiffs assert that the selection of the "failure date" was arbitrary. They claim the failure date should have been months, if not years, earlier based on SMI's submissions to the Agency.

Based on these facts, Plaintiff's second amended complaint alleges six[1] counts: negligence against the Agency; violation of the Indiana Equal Privileges and Immunities Clause against the Agency; violation of the Federal Equal Protection Clause against the Agency and Wilmoth in his

---

[1] The counts are numbered I through VII, but there is no count V. (ECF No. 23 at 18–26).

"personal" and official capacities; procedural and substantive due process claims against and the Agency and Wilmoth in his "personal" and official capacities under the federal and state constitutions; violation of the Separation of Powers clause of the Indiana Constitution against the Agency; and fraud against the Agency.

**II.      Legal Discussion**

**A.      *Motion to Dismiss Standard***

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to set forth a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Thus, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the claim in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At a minimum, the claim must give fair notice of what the claim is and the grounds on which it rests; and the factual allegations must raise a right to relief above the speculative level. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009); *Tamayo*, 526 F.3d at 1081, 1083. While a claim need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although this does not

require heightened fact pleading of specifics, it does require the claim to contain enough facts to state a claim to relief plausible on its face. *Bell Atl. Corp.*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("(a) plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief").

**B.**     *42 U.S.C. § 1983*

Plaintiffs' second amended complaint re-raises previously dismissed claims under 42 U.S.C. § 1983. Claims under the statute were dismissed by this Court on agreement of the parties because neither the state nor its agencies are a "person" under the statute. (*See* ECF No. 20 at 4). Plaintiffs have returned seeking relief of two kinds: injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), against the Agency and Wilmoth in his official capacity, and statutory damages against Wilmoth in his individual capacity. Defendant moves to dismiss both.[2]

**1.**     *Injunctive Relief*

The *Ex parte Young* doctrine "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000) (citations omitted). There is a longstanding rationale that underlies this doctrine: "[B]ecause an unconstitutional legislative enactment is 'void,' a state official who enforces that law 'comes into conflict with the superior authority of the Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.'" *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (quoting *Ex parte Young*, 209 U.S. at 159–60). To determine whether a state actor may be so stripped of the official character of their positions, the Court "'need only conduct

---

[2] Defendants initially moved to dismiss the § 1983 claims, in part, on Eleventh Amendment grounds. (*See, e.g.*, ECF No. 31 at 7). Defendants have abandoned this ground in their reply. (ECF No. 40 at 1).

a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The parties focus on whether the second amended complaint alleges an ongoing violation, but the Court finds the nature of the relief requested to be dispositive. Plaintiffs allege that they are "entitled to injunctive relief against Wilmoth and the Agency prohibiting Wilmoth and the Agency from continuing to ignore statutory duties and grain buyer license requirements imposed by I.C. 26-3-7." (ECF No. 23 at 25). But the Seventh Circuit is clear that this Court cannot "insist that some provisions in state law, which counsel thinks underenforced, be fully enforced." *Ashley W. v. Holcomb*, 34 F.4th 588, 594 (7th Cir. 2022). "It is improper for a federal court to issue an injunction requiring a state official to comply with state law." *Id.*, citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 97–124 (1984). Because that is precisely what Plaintiffs ask this Court to do—order the Agency and Wilmoth to fully enforce the terms of Ind. Code § 26-3-7—prospective injunctive relief is unavailable. *Ex parte Young* does not apply, leaving no official capacity claim.

**2.**    *Individual Capacity Claims*

"On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The difference between individual and official capacity claims turns not on the capacity in which the individual defendant acted when violating the federal right, but on who is the real party. *Hafer v. Melo*, 502 U.S. 21, 27-30 (1991). An individual capacity

5

claim requires "a showing of personal involvement[3] by a defendant government actor." *Warren ex rel. Warren v. Dart*, No. 09-CV-3512, 2010 WL 4883923, at *4 (N.D. Ill. Nov. 24, 2010) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Plaintiffs' individual capacity claims proceed on two paths. The first is a claim for a violation of due process. Plaintiffs allege that they did not receive the process required by Ind. Code § 26-3-7: they did not have notice of SMI's financial condition, and the Agency did not hold a shortage hearing or a hearing to determine the failure date. (ECF No. 39 at 13–14). Effectively, Plaintiffs argue that they did not receive the process that state law requires, and that this deprivation supports a federal due process violation.

The problem for Plaintiffs is that "there is no constitutional procedural due process right to state-mandated procedures." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 366 (7th Cir. 2019); *see also Pro–Eco, Inc. v. Bd. of Comm'rs*, 57 F.3d 505, 514 (7th Cir. 1995) (a violation of a state procedural statute does not offend the Constitution); *Wallace v. Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution."); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law . . . is not a denial of due process, even if the state law confers a procedural right."); *Coniston Corp. v. Vill. of Hoffman Estates, et al.*, 844 F.2d 461, 467 (7th Cir. 1988) ("A violation of state law is not a denial of due process....") (citations omitted). No matter the process required by state law, and no matter whether Plaintiffs received it, no federal constitutional claim can arise from the facts alleged by Plaintiffs.

---

[3] The personal involvement requirement troubles the Court. The allegations in the second amended complaint almost always couple the Agency and Wilmoth together when discussing acts or omissions that support the complaint. The Court finds only three instances of individual action by Wilmoth: his decision to audit SMI after receiving a call from a bank employee (ECF No. 23 at 9); his compilation and review of SMI's financial information (*id*.); and his receipt of a report that SMI was a "problem license." (*Id*. at 16). None of those strike the Court as alleging that Wilmoth was personally involved in any of the alleged violations. But neither party addresses this issue, so the Court assumes that there is no dispute about Wilmoth's role.

6

Plaintiffs also seek to bring a substantive due process claim. Both the Supreme Court and the Seventh Circuit have "emphasized how limited the scope of the substantive due process doctrine is." *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). Accordingly, substantive due process is not "a blanket protection against unjustifiable interferences with property." *Schroeder v. City of Chicago*, 927 F.2d 957, 961 (7th Cir. 1991).

Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. *See Glucksberg*, 521 U.S. at 728. And when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show "either the inadequacy of state law remedies or an independent constitutional violation" before the Court will even engage in this deferential rational-basis review. *Doherty v. City of Chicago*, 75 F.3d 318, 323–26 (7th Cir. 1996); *see also Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997) ("[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." (quotations omitted)).

Assuming, for a moment, that Plaintiffs have a state-created property interest, the Court does not find that Plaintiffs have alleged a violation of a separate substantive constitutional right or that available state remedies are inadequate. As noted above, there is no federal procedural due process claim here and as will be explained later, there is no equal protection claim. There is, then, no federal constitutional violation on which to base a substantive due process claim.

Nor can Plaintiff show the inadequacy of state remedies. First, the Court notes that five out of the six counts presented assert state law remedies. These claims, in and of themselves, are evidence that state law is not inadequate to address Plaintiffs' alleged losses. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (identifying pendant state-law claims as evidence of the adequacy of state law remedies); *see also Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002). And as Defendants note, Plaintiffs did avail themselves of administrate appeals of Defendants' actions. (*See* ECF No. 39-1). Plaintiffs counter that the administrative appellate body refused to consider some of their claims, but the adequacy of state remedies is not measured by the outcome. "[T]he pertinent question is not whether the state court would be inclined to rule in petitioner's favor, but whether there is any available state procedure for determining the merits of petitioner's claim." *White v. Peters*, 990 F.2d 338, 341 (7th Cir. 1993).

No matter how creatively the issue is pled, Plaintiffs' concerns are ones of Indiana administrative law. Indiana has established a procedure to address Plaintiffs' concerns at the administrative level (Ind. Code § 26-4-6-1 *et seq.*; 824 I.A.C. § 2), the administrative appeal level (Ind. Code § 4-21.5-3.1 *et seq.*), and on judicial review (Ind. Code § 4-21.5-5-1 *et seq.*). This is where Plaintiffs' battle should be fought. These are not matters of Constitutional concern and cannot create a federal due process claim.

The second path pursued by Plaintiffs is that of equal protection. Arguing they are a "class of one," Plaintiffs claim that Defendants' alleged failure to properly regulate SMI deprived them of the equal protection of the laws of both Indiana and the United States.

This is not a garden-variety equal protection challenge; such challenges are "typically . . . concerned with governmental classifications that affect some groups of citizens differently from others." *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quotation omitted) (citing

collected cases). Therefore, individuals pursuing equal protection challenges ordinarily "allege that they have been arbitrarily classified as members of an 'identifiable group.'" *Id*. In contrast, a class-of-one equal protection challenge asserts that an individual has been "irrationally singled out," without regard for any group affiliation, for discriminatory treatment. *Id*. A class-of-one equal protection claim is cognizable where an individual alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

"[A] 'perplexing situation' . . . arises when a lawsuit challenging a government action subject only to rational basis review is evaluated under the deferential standard of a Rule 12(b)(6) motion to dismiss." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992)). A class-of-one plaintiff must anticipate this dilemma. "[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *Id*. (quoting *Wroblewski*, 965 F.2d at 460).

Assuming, without finding, that a class of one claim even applies in the context of this kind of agency action, *see United States v. Moore*, 543 F.3d 891, 899–901 (7th Cir. 2008), the Court sees a fundamental flaw in Plaintiffs' equal protection claim. The jumping off point for any class of one claim is that *the individual*, or *group of individuals*, bringing the suit has been intentionally treated differently. *See*, *e.g.*, *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). The entity that was allegedly treated differently was SMI. True, Plaintiffs have alleged that they were affected by the disparate treatment, but the Court can find no case law that would support the idea that suffering collateral damage from disparate treatment gives one the same class of one right as the individual or entity that was allegedly the target of the treatment. For instance, the Court can

9

find no case in which a tenant has been allowed to bring a class of one case because its landlord received an adverse ruling from a zoning board. Or, perhaps timelier, the Court can find no case in which a bank account holder was allowed to pursue a class of one claim against a bank regulator when a bank failed. Plaintiffs identify no such authority in their over-sized brief.

The Court does not question Plaintiffs allegations that they have suffered because of Defendants' failure to properly regulate SMI. What it does question is whether that creates an equal protection claim under the United States Constitution. The Court does not think that it does, and there has been no authority cited to the Court that would change its mind. The Court finds no Constitutional claim in the well-pleaded facts and dismisses the § 1983 claims against Wilmoth in his individual capacity.

C.  *Remaining State Law Claims*

For the reasons stated above, the Court will grant Defendants' motion to dismiss all federal claims. Because that disposition leads to the dismissal of all claims over which the Court has original jurisdiction, see 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over the state-law claims and rule on Defendants' motion to dismiss related to those claims.

As the Seventh Circuit has consistently stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims"); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before

trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. As the court has explained, sometimes there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*.

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state-law claims in federal court in which to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted significant resources to the disposition of the federal claims on two separate motions to dismiss, it has not delved deeply into the state-law claims. *See Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). Thus, while there are times when "a district court should exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state-law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. Still, "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. This is a close call. The Court cannot say with certainty that Plaintiffs' state-law claims are frivolous. While Plaintiff's state-law claims arise out of the same facts as their now-defunct federal claims, they still face distinct legal analysis.

In sum, the Court finds that none of the exceptions to the "usual practice" applies here. As a result, the Court denies Defendants' motion dismiss without prejudice on Plaintiffs' state-law claims and dismisses those claims with leave to refile in state court.

**III.    Conclusion**

For these reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. All claims under the United States Constitution are DISMISSED with prejudice. All remaining state-law claims are DISMISSED WITHOUT PREJUDICE to refiling. The Clerk is DIRECTED to close this case.

SO ORDERED on May 16, 2023.

                                          s/ *Holly A. Brady*
                                          JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT